UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| ARCH SPECIALTY INSURANCE COMPANY,<br><br>PLAINTIFF/COUNTER-DEFENDANT,<br><br>V.<br><br>ELEVATION FINANCIAL GROUP, LLC,<br><br>DEFENDANT/COUNTER-PLAINTIFF. | CASE NO. 6:22-CV-1539-WWB-DAB<br><br>**DEMAND FOR A JURY TRIAL**<br><br>**DECLARATORY RELIEF REQUESTED** |

**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS OF DEFENDANT/COUNTER-PLAINTIFF ELEVATION FINANCIAL GROUP, LLC**

Defendant/Counter-Plaintiff Elevation Financial Group, LLC ("Elevation") files this Answer and Counterclaims to Plaintiff/Counter-Defendant Arch Specialty Insurance Company's ("Arch") First Amended Complaint with Declaratory Relief Requested (the "First Amended Complaint") (Doc. 13). In support, Elevation respectfully states and alleges as follows:

## ANSWER TO ARCH'S FIRST AMENDED COMPLAINT

### I. INTRODUCTION

1. Admitted that Arch has brought a declaratory judgment action against Elevation but denied that Arch is entitled to the relief it seeks in its First Amended Complaint and denied that Arch's declaratory judgment action is otherwise proper.

### II. PARTIES

2. Admitted.

3. Admitted, subject to the clarification that both Stuart Heaton and his wife Carolyn Heaton are members of Elevation.

## III. JURISDICTION AND VENUE

4. Admitted that this Court has diversity jurisdiction over the dispute between Arch and Elevation.

5. Admitted that venue is proper in this Court subject to a full reservation of Elevation's rights regarding the separate issue of choice of law.

## IV. JUSTICIABLE CONTROVERSY

6. Admitted that an actual controversy of a judicial nature exists between Arch and Elevation and may be determined by a judgment of this Court.

7. Admitted, subject to a full reservation of Elevation's rights regarding the scope of discovery and the admissibility of extrinsic evidence.

## V. FACTS COMMON TO ALL COUNTS

8. Admitted.

9. Admitted.

10. Admitted.

11. Admitted only that the written insurance policy referenced in Paragraph 11 contains the provisions cited and quoted in Paragraph 11. Elevation denies any allegations that tend to interpret or mischaracterize the contents of said policy.

12. Admitted only that the written insurance policy referenced in Paragraph 12 contains the provisions cited and quoted in Paragraph 12. Elevation denies any allegations that tend to interpret or mischaracterize the contents of said policy.

13. Admitted only that the written insurance policy referenced in Paragraph 13 provides coverage for the real property at the location referenced in Paragraph 13.

Elevation denies any allegations that tend to interpret or mischaracterize the contents of said policy.

14. Admitted only that the "four corners" of the "SOV" referenced in Paragraph 14 contain the figures listed in Paragraph 14. Elevation denies any allegations that tend to interpret or mischaracterize the significance or effect of those figures.

15. Admitted only that a fire did occur at the referenced property on the referenced date.

16. Admitted.

17. Admitted.

18. Admitted only that the referenced letter was sent on the referenced date. Elevation denies any allegations that tend to interpret or mischaracterize the contents of said letter and/or the relevant insurance policies. Furthermore, to the extent that the allegations in the letter contain legal conclusions, no response is required. To the extent that a response to such conclusions is required, Elevation denies the allegations in Paragraph 18.

19. Elevation is without sufficient information to admit or deny the factual allegations in Paragraph 19 because Elevation was not involved in this communication.

## VI. COUNT I

**Declaratory Judgment**
**Application of the Occurrence Limit of Liability Endorsement**

20. Elevation incorporates by reference the allegations of Paragraphs 8 through 19 of its Answer, as if fully set forth herein.

21. The allegations in Paragraph 21 contain legal conclusions to which no response is required. To the extent a response is required, Elevation denies the allegations in Paragraph 21.

22. The allegations in Paragraph 22 contain legal conclusions to which no response is required. To the extent a response is required, Elevation denies the allegations in Paragraph 22.

23. The allegations in Paragraph 23 contain legal conclusions to which no response is required. To the extent a response is required, Elevation denies the allegations in Paragraph 23.

24. Admitted only that Arch is requesting a declaration regarding the Parties' rights and obligations under the subject insurance policies. Elevation otherwise denies the allegations in Paragraph 24 and specifically denies that Arch is entitled to any of the relief that it seeks.

25. Admitted only that Arch and Elevation disagree about how the policies at issue apply to the losses at issue. Elevation otherwise denies the allegations of Paragraph 25.

26. Admitted only that there is an actual controversy between Arch and Elevation.

**VII. COUNT II**

**Declaratory Judgment**
**Coverage for the Main Building (38.1)**

27. Elevation incorporates by reference Paragraphs 8 through 19 of its Answer, as if fully set forth herein.

28. The allegations in Paragraph 28 contain legal conclusions to which no response is required. To the extent a response is required, Elevation denies the allegations in Paragraph 28.

29. Denied.

30. Elevation denies the allegations in Paragraph 30 because they encompass Arch's coverage position and damages-allocation position.

31. The allegations in Paragraph 31 contain legal conclusions to which no response is required. To the extent a response is required, Elevation denies the allegations in Paragraph 31.

32. Elevation denies that it has submitted support only for its "real property" claim, and Elevation is without sufficient information to admit or deny the remaining allegations in Paragraph 32.

33. The allegations in Paragraph 33 contain legal conclusions to which no response is required. To the extent a response is required, Elevation denies the allegations in Paragraph 33.

34. Admitted only that Arch is requesting a declaration regarding the Parties' rights and obligations under the subject insurance policies. Elevation otherwise denies the remaining allegations in Paragraph 34 and specifically denies that Arch is entitled to any of the relief that it seeks.

35. Admitted only that Arch is requesting a declaration regarding the Parties' rights and obligations under the subject insurance policies. Elevation otherwise denies the remaining allegations in Paragraph 35 and specifically denies that Arch is entitled to any of the relief that it seeks.

36. Admitted only that Arch and Elevation disagree about how the policies at issue apply to the losses at issue. Elevation otherwise denies the allegations of Paragraph 36.

37. Admitted only that there is an actual controversy between Arch and Elevation.

## VIII. COUNT III

**Declaratory Judgment**
**Coverage for the Expansion Building (38.7)**

38. Elevation incorporates by reference Paragraphs 8 through 19 of its Answer, as if fully set forth herein.

39. The allegations in Paragraph 39 contain legal conclusions to which no response is required. To the extent a response is required, Elevation denies the allegations in Paragraph 39.

40. Denied.

41. Elevation denies the allegations in Paragraph 41 because they encompass Arch's coverage position and damages-allocation position.

42. The allegations in Paragraph 42 contain legal conclusions to which no response is required. To the extent a response is required, Elevation denies the allegations in Paragraph 42.

43. Elevation denies that it has submitted support only for its "real property" claim, and Elevation is without sufficient information to admit or deny the remaining allegations in Paragraph 43.

44. The allegations in Paragraph 44 contain legal conclusions to which no response is required. To the extent a response is required, Elevation denies the allegations in Paragraph 44.

45. Admitted only that Arch is requesting a declaration regarding the Parties' rights and obligations under the subject insurance policies. Elevation otherwise denies the remaining allegations in Paragraph 45 and specifically denies that Arch is entitled to any of the relief that it seeks.

46. Admitted only that Arch is requesting a declaration regarding the Parties' rights and obligations under the subject insurance policies. Elevation otherwise denies the remaining allegations in Paragraph 46 and specifically denies that Arch is entitled to any of the relief that it seeks.

47. Admitted only that Arch and Elevation disagree about how the policies at issue apply to the losses at issue. Elevation otherwise denies the allegations of Paragraph 47.

48. Admitted only that there is an actual controversy between Arch and Elevation.

## IX. COUNT IV

**Declaratory Judgment**
**The Illinois Union Errors and Omissions Endorsement**

49. Elevation incorporates by reference Paragraphs 8 through 19 of its Answer, as if fully set forth herein.

50. Admitted only that the written insurance policy referenced in Paragraph 50 contains the provisions cited and quoted in Paragraph 50. Elevation denies any allegations that tend to interpret or mischaracterize the contents of said policy.

51. Elevation admits that it, at a minimum, is entitled to the coverage available under the referenced "Errors and Omissions Endorsement." Elevation is without sufficient information to admit or deny the remainder of Paragraph 51.

52. The allegations in Paragraph 52 contain legal conclusions to which no response is required. To the extent a response is required, Elevation denies the allegations in Paragraph 52.

53. The allegations in Paragraph 53 contain legal conclusions to which no response is required. To the extent a response is required, Elevation denies the allegations in Paragraph 53.

54. The allegations in Paragraph 54 contain legal conclusions to which no response is required. To the extent a response is required, Elevation denies the allegations in Paragraph 54.

55. The allegations in Paragraph 55 contain legal conclusions to which no response is required. To the extent a response is required, Elevation denies the allegations in Paragraph 55.

56. Admitted only that Arch is requesting a declaration regarding the Parties' rights and obligations under the subject insurance policies. Elevation denies the remaining allegations in Paragraph 56 and specifically denies that Arch is entitled to any of the relief that it seeks.

57. Admitted only that Arch is requesting a declaration regarding the Parties' rights and obligations under the subject insurance policies. Elevation denies the remaining allegations in Paragraph 57 and specifically denies that Arch is entitled to any of the relief that it seeks.

58. Admitted only that Arch and Elevation disagree about how the policies at issue apply to the losses at issue. Elevation otherwise denies the allegations of Paragraph 58.

59. Admitted only that there is an actual controversy between Arch and Elevation.

**ARCH'S PRAYER**

In response to Paragraph 60, Elevation denies that Arch is entitled to the relief sought against Elevation, or to any judgment whatsoever against Elevation.

**ELEVATION'S AFFIRMATIVE DEFENSES TO ARCH'S FIRST AMENDED COMPLAINT**

1. The claims asserted in the First Amended Complaint are barred by Arch's material failure to comply with its obligations under the referenced Arch insurance policy.

2. The claims asserted in the First Amended Complaint are barred by the doctrine of unjust enrichment.

3. The claims asserted in the First Amended Complaint are barred by the doctrine of substantial compliance.

4. The claims asserted in the First Amended Complaint are barred by the doctrine of unclean hands.

5. Elevation avers that the insurance policies unambiguously provide coverage for Elevation for the losses at issue but, in the alternative, Elevation alleges that the insurance policies are ambiguous and must be construed in favor of coverage.

6. The claims asserted in the First Amended Complaint are barred by the doctrines of waiver or estoppel.

7. The First Amended Complaint is defective because it fails to join a necessary and indispensable party as required by Federal Rule of Civil Procedure 19.

8. The First Amended Complaint is defective to the extent that judicial abstention is appropriate based on a future state court action that includes both Arch and one or more other necessary and indispensable parties.

## **RELIEF REQUESTED ON ANSWER**

a. That Arch takes nothing by way of its First Amended Complaint for Declaratory Judgment;

b. That Arch's First Amended Complaint be dismissed with prejudice;

c. That Elevation recover its attorneys' fees and costs; and

d. That Elevation be granted such other and further relief, at law and in equity, to which Elevation may show itself entitled and that the Court may deem just and proper.

## ELEVATION'S COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13, Elevation, for its Counterclaims against Arch, states and alleges as follows:

## I. INTRODUCTION

1. As explained more fully below, through its Counterclaims, Elevation brings causes of action against Arch for declaratory relief, breach of contract, and for bad faith under Texas and/or Florida law.

2. This dispute arises out of insurance policies that Elevation purchased from several insurance companies, including Arch, to protect Elevation from the risks associated with owning residential properties across the United States.

3. At its core, Elevation alleges that Arch has breached its insurance policy by refusing to provide the policy's full limits for losses incurred by Elevation arising from a fire that occurred at one of Elevation's properties.

4. Elevation also alleges that Arch has acted in bad faith by failing to reasonably handle, investigate, and adjust the losses that Elevation has incurred.

5. Elevation has been forced to cover a significant amount of the losses associated with the fire, without the entirety of the insurance coverage for which it bargained.

6. For those and other reasons, Elevation brings these Counterclaims.

## II. PARTIES

7. Counter-Plaintiff Elevation Financial Group, LLC is a Florida limited liability company, whose members are King Family Global Enterprises, LLC, a Florida limited liability company; Crown Creative, LLC, a Florida limited liability company; Morg Personal

Holdings, LLC, a Nevada limited liability company; Ammalara Enterprises, LLC, a Florida limited liability company; and Stuart Heaton and Carolyn Heaton, residents and domiciliaries of Seminole County, Florida. The members of King Family Global Enterprises, LLC are residents and domiciliaries of Orange County, Florida. The members of Crown Creative, LLC are residents and domiciliaries of Fulton County, Georgia. The sole member of Morg Personal Holdings, LLC is a resident and domiciliary of Orange County, Florida. The members of Ammalara Enterprises, LLC are residents and domiciliaries of Orange County, Florida.

8. Upon information and belief, Counter-Defendant Arch is an insurance company organized under the laws of Missouri with its principal place of business in Jersey City, New Jersey.

## III. <u>JURISDICTION AND VENUE</u>

9. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because Arch and Elevation are citizens of different states, and the matter in controversy exceeds $75,000, exclusive of interest and costs.

10. The Court has personal jurisdiction over Arch because Arch sold the insurance policy at issue to a Florida limited liability company, as described further herein.

## <u>IV. JUSTICIABLE CONTROVERSY</u>

11. An actual and justiciable controversy exists between Elevation and Arch concerning the applicability of insurance coverage under the policy that Elevation purchased from Arch with respect to an April 7, 2022 fire at Elevation's property, which is a proper subject for resolution by this Court pursuant to 28 U.S.C. §§ 2201 and 2202.

12. Because the adjustment of the fire loss is ongoing, the Parties are in need of a judicial declaration of their rights and obligations under the policy that Elevation purchased from Arch.

## V. FACTS COMMON TO ALL COUNTS

### A. Elevation Purchased Insurance Policies to Cover the Risks Associated with Owning Properties Across the United States.

13. Elevation focuses on purchasing, revitalizing, and operating affordable apartment communities for independent seniors across the United States.

14. One of the properties/locations that Elevation owns and operates is an apartment complex located at 3205-3305 Dilido Road, Dallas, TX 75228 ("Serenity at Dallas").

15. To protect itself from the potential risks associated with owning these properties, Elevation purchased a multi-layer property insurance program for the policy period from April 1, 2022 to April 1, 2023.

### B. The Illinois Union Primary Policy, to Which the Arch Policy Follows Form, Covers Not Only Property Damage but Also Several Other Types of Losses.

16. Illinois Union Insurance Company ("Illinois Union"), which is a Chubb affiliate, provided the primary layer of coverage pursuant to policy number D37416861 009 (the "Illinois Union Policy"). The Illinois Union Policy has a limit of $5 million per occurrence. The Illinois Union Policy is attached as Exhibit A to Arch's First Amended Complaint (Doc. 13-1).

17. The Illinois Union Policy contains an "Occurrence Limit of Liability Endorsement" ("Illinois Union OLLE") which provides:

> In the event of covered loss, liability of the Company shall be limited to the least of the following:
>
> (a) the actual adjusted amount of covered loss, less applicable deductible(s);
>
> (b) 100% of the total Covered Property Value of all items or elements of coverage that sustained a covered loss in a single Occurrence, less applicable deductibles; except 110% of the total Covered Property Value of all items or elements of coverage at 519 First Street, Sanford, FL that sustained a covered loss in a single Occurrence, less applicable deductibles;
>
> (c) the Limit of Liability or amount of insurance shown on the face of this policy.

18. In addition to coverage for property damage to buildings, the Illinois Union Policy also provides several coverage extensions. These additional coverages sometimes have their own sub-limits, but the sub-limits may be aggregated if more than one additional coverage is triggered.

19. The Illinois Union Policy's coverage extensions include, but are not limited to, the following:

(a) The "Debris Removal" provision, providing additional coverage for the policyholder's "expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period;"

(b) The "Business Income (and Extra Expenses)" coverage form, providing additional coverage for the actual loss of business income and the extra expenses incurred during a necessary suspension of operations during the "period of restoration;" and

(c) The "Ordinance or Law Coverage" Endorsement, providing additional coverage for, among other things, the "increased cost to … [r]epair or reconstruct damaged portions of [a] building … when the increased cost is a consequence of a requirement to comply with the minimum standards of [an] ordinance or law."

20. Separately, the Illinois Union Policy contains an "Errors and Omissions Endorsement," providing:

> **COVERAGE**
> In the event of physical loss or damage to property of the Insured located in the Policy territory, and such loss or damage is not payable under this Policy solely because of:
>
> (a) Any error or unintentional omission in the description or location of property insured under this Policy, which error or omission existed at the inception date of this Policy; or
>
> (b) Any error or unintentional omission in the description or location of property insured under this Policy, in any subsequent amendments to this Policy; or
>
> (c) Failure through error or unintentional omission to include
>
> Any location owned or occupied by the Insured at the inception date of this Policy, or
>
> Any location newly acquired or occupied during the term of this Policy; or
>
> Any error or unintentional omission which results in cancellation of property insured under this Policy, such loss or damage shall be insured by this Policy only to the extent this Policy would have provided coverage had the error or unintentional omission not been made. If this Policy is endorsed to include Time Element coverage, the specified limit shall be the maximum amount collectible under this Policy for physical loss or damage insured against by this Policy at any one location.
>
> It is a condition of this coverage that such error or unintentional omission shall be reported and corrected when discovered.
>
> **SUB-LIMIT OF INSURANCE**
> The most we will pay under this coverage extension is the Errors and Omissions limit stated in the Declarations or in the Sub-limit Provision Endorsement attached to this Policy. This additional coverage is provided within, not in addition to, the Limit of Insurance stated in the Declarations.

21. Pursuant to the Sub-limit Provision Endorsement, the sub-limit for the Errors and Omissions Endorsement is $1 million.

22. Upon information and belief, the purpose of the Errors and Omissions Endorsement, and similar provisions, as understood in the insurance industry, is to avoid strict application of OLLE provisions in an insurance coverage tower if there is an error in a schedule of values provided by the policyholder during underwriting.

**C. With Few Exceptions, the Arch First Layer Excess Policy Generally Follows Form to the Illinois Union Policy.**

23. Arch provided the first-layer excess policy pursuant to policy number ESP7301076-08 (the "Arch Policy") (together with the Illinois Union Policy, the "Policies"). The Arch Policy provides $5 million per occurrence in excess of the underlying $5 million from the Illinois Union Policy. The Arch Policy is attached as Exhibit B to Arch's First Amended Complaint (Doc. 13-2).

24. With limited exceptions, the Arch Policy follows form to the Illinois Union Policy:

> **A. INSURING AGREEMENT**
>
> We agree to indemnify you for an "insured loss" in excess of, and after, the "underlying insurance" have paid or admitted liability for the full amount of their policy limits of liability. Except for the Limit/Participation provision, and the terms, conditions, definitions, exclusions and limitations contained in this policy, the coverage provided by this policy shall follow the terms, conditions, definitions, exclusions and limitations of the "controlling underlying insurance."

25. One of the provisions of the Illinois Union Policy to which the Arch Policy follows form is the above-referenced Errors and Omissions Endorsement.

26. The Arch Policy also contains its own OLLE, which provides:

> **2.** The premium for this policy is based upon the Statement of Values on file with us, or attached to this policy. In the event of loss hereunder, our liability, subject to the terms of

paragraph **3**. below, shall be limited to the least of the following:

**a.** The actual adjusted amount of loss, less applicable deductible(s).

**b.** 100% of the individually stated value for each scheduled item of interest insured, as shown on the latest Statement of Values on file with us, or attached to this policy, 1after applying the deductible(s).

**c.** The Limit of Liability or Amount of Insurance shown on the Declarations Page or endorsed onto this policy.

**3.** The Limit of Liability or Amount of Insurance shown on the Declarations Page of this policy, or endorsed onto this policy, is the total limit of our liability applicable to each "occurrence." Notwithstanding any other terms and conditions of this policy, in no event shall our liability exceed this limit or amount, irrespective of the number of locations involved.

27. Although Arch included its own OLLE rather than just following form to the Illinois Union OLLE, Arch did not include any language in the Arch Policy that purports to remove or otherwise limit the application of the Errors and Omissions Endorsement to which the Arch Policy otherwise follows form.

**D. Elevation Has Additional Coverage Beyond Arch's First-Layer Excess Insurance Policy.**

28. Landmark American Insurance Company ("Landmark") issued Elevation a second-layer excess insurance policy that provides $10 million per occurrence in excess of the underlying $5 million from the Illinois Union Policy and the underlying $5 million from the Arch Policy.[1]

---

[1] As described below, Elevation's past and projected future losses giving rise to this lawsuit exceed Arch's policy limits and will require additional coverage and relief from Landmark. Elevation anticipates, however, that Landmark will assert that its policy does not cover the losses at issue, and/or that its policy limits the coverage available to less than the roughly $2 million in losses that exceed Landmark's attachment point. Accordingly, Elevation desires to seek

**E. Elevation Incurs Massive Losses Relating to a Catastrophic Fire at its Serenity at Dallas Location, and Illinois Union Pays its $5 Million Limit.**

29. On April 7, 2022, a fire occurred at one of Elevation's insured properties, namely, Serenity at Dallas. Fortunately, there were no casualties; but the fire destroyed approximately 50,000 square feet of the property and over 40 apartment units.

30. Elevation's past losses and projected future losses exceed $12 million.

31. Elevation promptly provided its insurers with notice of the loss.

32. In response to Elevation's insurance claim, Illinois Union paid its full underlying limit of $5 million.

**F. Arch Improperly Refuses to Comply with Its Contractual Obligations.**

**i. Arch Improperly Treats Serenity at Dallas as Two Properties Instead of One Property for Purposes of Applying the Arch OLLE.**

33. August 17, 2022, Engle Martin, on behalf of Arch, sent correspondence to Elevation arguing that, after deducting depreciation, the $50,000 deductible, and the Illinois Union payment, the amount due for losses associated with the real property at Serenity at Dallas was $436,818.30, and the payment would be issued upon return of the executed Proof of Loss. A copy of the coverage position letter is attached as Exhibit E to Arch's First Amended Complaint (Doc. 13-5).

---

additional declaratory relief against Landmark as a third-party defendant so that these coverage claims arising from the same loss can be adjudicated in the same case. However, because Landmark lacks complete diversity with Elevation, joinder would deprive this Court of subject matter jurisdiction over the claim. For that reason, Elevation will be filing a complaint in Florida state court against Arch and Landmark to recover the full measure of its losses and to adjudicate all parties' interrelated claims arising from the same event. Thereafter, Elevation will seek the appropriate relief from this Court to abstain from asserting jurisdiction over this matter so that all implicated parties can litigate their state law insurance dispute in a comprehensive action that encompasses all parties and issues relevant to the dispute.

34. In its letter, Arch alleged that the stated values for Serenity at Dallas are as follows:

| | 38.1 (Main Building) | | 38.7 (Expansion Building) | |
|---|---|---|---|---|
| Real Property | $ | 4,381,800 | $ | 3,364,050 |
| Personal Property | $ | 166,500 | $ | 58,500 |
| Other Value | $ | - | $ | 150,000 |
| BI/Rental Income | $ | 1,116,216 | $ | 392,184 |
| **Total TIV** | **$** | **5,664,516** | $ | **3,964,734** |

A copy of the Statement of Loss is attached as Exhibit D to Arch's First Amended Complaint (Doc. 13-4).

35. Furthermore, Arch calculated Elevation's payable losses as follows, utilizing the below-highlighted figures:

| Based on the adjustment team's estimates of damage and the values in the SOV, the limits on Elevation's coverage would be determined as follows: | **The Main Building (38.1)** | | **The Expansion Building (38.7)** | |
|---|---|---|---|---|
| **Total Stated Value For Each Building** | **$** | **5,664,516.00** | **$** | **3,964,734.00** |
| Mitigation | **$** | **2,078,671.75** | **$** | **768,823.80** |
| Real Property | **$** | **6,923,614.05** | **$** | **337,844.13** |
| Personal Property | **$** | **225,000.00** | | |
| Business Interruption | **$** | **2,000,000.00** | | |
| **Total Adjusted Loss** | **$** | **11,227,285.80** | **$** | **1,106,667.93** |

36. Arch's treatment and characterization of the Main Building and the Expansion Building at Serenity at Dallas as two separate items of interest for purposes of applying the OLLE is improper and factually wrong. The "two properties" are in fact a single, contiguous building with two wings that are joined together with an interior, air-

conditioned hallway. There is no separate ingress to or egress from the Expansion Building without passing through the Main Building. Elevation and its residents at Serenity at Dallas treat the "two properties" as one for all purposes because, importantly, the two wings of the building do not and cannot operate independently; there is only one entrance for both wings through the Main Building and both wings of the building are connected via the same utilities and HVAC services.

37. Even Arch has treated the Main Building and the Expansion Building as one for allocating losses. For example, upon information and belief, it appears that Arch allocated the total remediation cost between the two wings of the building based on each wing's actual square footage, regardless of the costs actually attributable to each wing.

38. Treating Serenity at Dallas as one property, rather than two properties, would yield a total insured value of at least $9,629,250, and perhaps more as discussed below. After subtracting Illinois Union's $5 million payment, Elevation is therefore entitled to a payment of at least $4,629,250 from Arch.

**ii. Even if Arch Were Correct That the Main Building and Expansion Building Are Two Separate Properties—Which Arch Is Not—Arch Improperly Allocates the Damage from the Fire at Serenity at Dallas Between the Properties.**

39. Even though the Expansion Building cannot operate independently of the Main Building, Arch's coverage position letter improperly allocated all business income and personal property losses to the Main Building in an apparent attempt to prematurely exhaust what Arch asserts is the policy's coverage limit for the Main Building, even though some of those losses occurred to the Expansion Building, where additional coverage is available. Specifically, Arch has allocated $2,000,000 of business interruption losses to

the Main Building and no loss to the Expansion Building, and $225,000 of personal property loss to the Main Building and no loss to the Expansion Building.

40. Arch also takes inconsistent and self-serving approaches with regard to applying actual square footage versus the square footage listed in the SOV. For example, upon information and belief, Arch has apparently allocated Elevation's remediation losses between the Main Building and Expansion Building based on their actual square footage rather than the square footage listed in the SOV, resulting in a significant over-allocation of loss to the Main Building (which has a lower reported square footage in the SOV), and a significant under-allocation of loss to the Expansion Building (which has a higher reported square footage in the SOV). That is, Arch seeks to "have it both ways" by treating the SOV as dispositive when determining the coverage limits under the OLLE, and then treating the SOV as meaningless when allocating damages across the Main Building and Expansion Building.

**iii. Arch Improperly Fails to Acknowledge Coverage Under Various Coverage Extensions.**

41. Various coverage extensions apply to Elevation's losses including, but not limited to, the following: the Debris Removal provision; the Business Income (and Extra Expenses) coverage form; and the Ordinance or Law Coverage Endorsement. However, Arch has failed to acknowledge that any coverage extension applies to Elevation's losses.

**iv. At a Minimum, Arch Improperly Fails to Acknowledge Its Obligation for the $1 Million in Coverage Available Under the Errors and Omissions Endorsement.**

42. At a minimum, the Errors and Omissions Endorsement's $1 million sub-limit applies to Elevation's losses because there were errors in the underwriting submission for the Policies.

43. First, there was an error in the description of the global square foot value for Serenity at Dallas that was reported during underwriting. Specifically, the stated value for the Main Building is erroneously based upon 58,424 square feet, whereas, upon information and belief, it is approximately 90,469 square feet. And the stated value for the Expansion Building is erroneously based upon 44,854 square feet, whereas, upon information and belief, it is approximately 24,154 square feet. This results in a lower global square foot value for Serenity at Dallas, and accordingly Elevation is unable to recover the true amount to which it is entitled under the Policies for its losses.

44. Second, there was an error in ascribing separate schedules of values for the Main Building and the Expansion Building which, as discussed above, are really one building. Thus, upon information and belief, after correcting the square footage, there should have been a single insured value for Serenity at Dallas of $10,480,125. But even accepting the erroneous square footages, there should have been at least a single insured value for Serenity at Dallas that totaled $9,629,250.

45. Nevertheless, in its August 17 coverage letter (Doc. 13-5), Arch erroneously argues that the Errors and Omissions Endorsement does not apply for two reasons.

46. First, Arch improperly argues that the Errors and Omissions Endorsement does not apply because the Endorsement is triggered only when the claimed "loss or damage" is <u>not</u> covered at all, whereas here Elevation's losses are covered, but to a very limited extent. Arch explains that a loss is "<u>not</u> payable," for example, where a property is entirely omitted from the SOV. (emphasis added). However, Arch's argument is inconsistent with the plain language of the Errors and Omissions Endorsement, which applies to "loss or damage [that] is not payable because of … [a]ny **error *<u>or</u>*** omission."

(emphasis added). Under Arch's view, the Endorsement effectively would apply only where a property was entirely omitted from the SOV. Yet, if that were correct, the Endorsement would apply only to "omissions." Arch's position would thus render the Endorsement's reference to "any … error" mere surplusage. Furthermore, upon information and belief, under insurance industry custom and practice, endorsements like the Errors and Omissions Endorsement are designed to apply to losses like Elevation's and are not limited to complete omissions and denials.

47. Arch fails to recognize that a significant portion of Elevation's "loss or damage" has been rendered not payable based upon the erroneous square footage of the Main Building and the separation of the Main Building and Expansion Wing as two scheduled items of interest for the purposes of its application of the Arch Policy's OLLE provision. Had the square footage of the Main Building been listed accurately, and/or the Main Building and Expansion Building been identified as a single scheduled item of interest, the full measure of Elevation's "loss or damage" would become payable.

48. Second, Arch improperly argues that the Errors and Omissions Endorsement changes the limits of liability of the Arch Policy and, as such, conflicts with the Arch Policy's OLLE provision; therefore, Arch says that the Arch Policy does not follow form to the Endorsement. This argument belies the language of the Arch Policy, which does not limit the application of the Errors and Omissions Endorsement and otherwise follows form to the Illinois Union Policy. And, based on information and belief, Arch's position is inconsistent with insurance industry custom and practice, which provides that excess policies containing follow-form provisions will adopt the provisions of the underlying policy unless the excess policy contains a provision explicitly stating otherwise.

**G. Attorneys' Fees**

49. Due to the actions of Arch, Elevation has been required to retain the services of the law firms of Haynes and Boone, LLP and King, Blackwell, Zehnder & Wermuth, P.A. Elevation has agreed to pay the firms a reasonable fee for their services necessarily rendered and to be rendered in this action. Pursuant to Section 38.001 of the Texas Civil Practices & Remedies Code and Section 542.060 of the Texas Insurance Code, and/or pursuant to Section 627.428(1), Florida Statutes, Elevation is entitled to an award of its reasonable attorneys' fees against Arch in an amount to be established at trial.

**COUNT I**

**Declaratory Judgment**

**The OLLE Applies to Serenity at Dallas as One Property, and Not Two Properties**

50. Elevation realleges and incorporates by reference herein as if fully restated the allegations in Paragraphs 1 through 49 of the Counterclaim.

51. Pursuant to the OLLE, Elevation's recovery is limited to the least of the following: (a) "[t]he actual adjusted amount of loss, less applicable deductible(s);" (b) "100% of the individually stated value for each scheduled item of interest insured, as shown on the latest Statement of Values on file with us, or attached to this policy, after applying the deductible(s);" or (c) "[t]he Limit of Liability or Amount of Insurance shown on the Declarations Page or endorsed onto this policy."

52. However, for purposes of calculating these amounts, namely, items (a) and (b), the parties should consider Serenity at Dallas as one property.

53. The "two properties" are in fact a single property with two wings that are joined together with an interior, air-conditioned hallway; there is no separate ingress to or

egress from the Expansion Building without passing through the Main Building; the two wings of the building do not and cannot operate independently; there is only one entrance for both wings through the Main Building and both wings of the building are connected via the same utilities and HVAC services.

54. Elevation requests a declaration that, for purposes of calculating Elevation's recovery under the OLLE, the parties should consider the Serenity at Dallas as one property. Treating Serenity at Dallas as one property, rather than two properties, would yield a total insured value of $9,629,250, even when using the erroneous square footage in the SOV. After subtracting Illinois Union's $5 million payment, Elevation is therefore entitled to a payment of at least $4,629,250 from Arch.

55. Nevertheless, Arch argues that the amounts should be calculated separately for the Main Building and the Expansion Building.

56. Accordingly, an actual, substantial, and justiciable controversy exists between Arch and Elevation, which is appropriate for resolution by this Court pursuant to 28 U.S.C. §2201, *et seq*.

**COUNT II**

**Declaratory Judgment**

**In the Alternative, even if the OLLE Applies Separately to the Main Building and Expansion Building, Arch Misallocates the Losses Between the Properties**

57. Elevation realleges and incorporates by reference herein as if fully restated the allegations in Paragraphs 1 through 49 of the Counterclaim.

58. Even if Arch is correct that the OLLE applies separately to the Main Building and Expansion Building—it does not—Arch does not properly allocate the amounts between the properties.

59. Specifically, Arch's coverage position letter improperly allocated all business income and personal property losses to the Main Building in an apparent attempt to prematurely exhaust the policy's coverage to the Main Building, while failing to properly allocate losses to Expansion Building, where additional coverage is available. Namely, Arch has allocated $2,000,000 of business interruption and $225,000 of personal property losses to the Main Building and no losses in either category to the Expansion Building even though the Expansion Building cannot operate without the Main Building and has not been operating since the fire loss occurred. This lopsided allocation results in a significant over-allocation of loss to Main Building and a significant under-allocation of loss to the Expansion Building.

60. Elevation requests a declaration that Arch has misallocated Elevation's losses between the Main Building and the Expansion Building. As a non-exclusive example, upon information and belief, Elevation's actual business interruption losses are properly allocated as $1,587,749 to the Main Building and $438,027 to the Expansion Building.

61. Nevertheless, Arch argues that its allocation of Elevation's losses is proper.

62. Accordingly, an actual, substantial, and justiciable controversy exists between Arch and Elevation, which is appropriate for resolution by this Court pursuant to 28 U.S.C. §2201, *et seq*.

**COUNT III**

**<u>Declaratory Judgment</u>**

**<u>In Addition to the Amounts Calculated Under the OLLE, the Arch Policy's Coverage Extensions Apply to Elevation's Losses</u>**

63. Elevation realleges and incorporates by reference herein as if fully restated the allegations in Paragraphs 1 through 49 of the Counterclaim.

64. Even if Arch is correct in arguing that the OLLE applies separately to the Main Building and Expansion Building, Elevation's recovery is not limited to $436,818.30; instead, the Policy's coverage extensions apply to Elevation's losses.

65. Elevation requests a declaration that the Arch Policy's coverage extensions apply, including, but not limited to, the following: the Debris Removal provision; the Business Income (and Extra Expenses) coverage form; and the Ordinance or Law Coverage Endorsement.

66. Nevertheless, Arch has failed to acknowledge the applicability of any such coverage extensions in adjusting Elevation's claim.

67. Accordingly, an actual, substantial, and justiciable controversy exists between Arch and Elevation, which is appropriate for resolution by this Court pursuant to 28 U.S.C. §2201, *et seq*.

**COUNT IV**

**Declaratory Judgment**

**At a Minimum, the Errors and Omissions Endorsement's $1 Million Sub-limit Applies to Elevation's Losses**

68. Elevation realleges and incorporates by reference herein as if fully restated the allegations in Paragraphs 1 through 49 of the Counterclaim.

69. Even if Arch is correct that Elevation's recovery is limited to $436,818.30 under the OLLE, the Errors and Omissions Endorsement's $1 million sub-limit also applies.

70. The Errors and Omissions Endorsement applies because there were errors in the description of Serenity at Dallas that was reported during underwriting for use in the SOV—errors that decreased the available coverage for Elevation's losses under the Policies.

71. Elevation requests a declaration that the Errors and Omissions Endorsement applies to errors like those made in the SOV here.

72. Elevation also requests a declaration that the Arch Policy follows form to the Errors and Omissions Endorsement and, thus, at a minimum, the Endorsement's $1 million sub-limit applies to Elevation's losses.

73. Nevertheless, Arch erroneously argues that the Errors and Omissions Endorsement does not apply because the Endorsement applies only where there is no coverage at all or, in the alternative, because the Endorsement conflicts with the Arch Policy's OLLE provision.

74. Accordingly, an actual, substantial, and justiciable controversy exists between Arch and Elevation, which is appropriate for resolution by this Court pursuant to 28 U.S.C. §2201, *et seq*.

**COUNT V**

**Breach of Contract**

75. Elevation realleges and incorporates by reference herein as if fully restated the allegations in Paragraphs 1 through 49 of the Counterclaim.

76. The Policies are valid and enforceable contracts.

77. Elevation is an insured under the Policies.

78. Elevation has complied with all applicable Policy provisions, including paying premiums and providing timely notice of its claim.

79. Elevation has satisfied all conditions precedent under the Policies or those conditions have been waived by Arch.

80. The April 7, 2022 fire caused physical damage to property at Serenity at Dallas and other, related losses to Elevation.

81. No exclusions apply to bar coverage.

82. The terms of the Policies unambiguously provide coverage for the costs associated with the fire at the Serenity at Dallas.

83. Alternatively, the terms of the Policies are ambiguous with respect to coverage and should therefore be construed in favor of Elevation, in accord with Texas or Florida law.

84. Nonetheless, Arch unjustifiably refuses to pay its full $5 million limit for these losses, in breach of the Arch Policy.

85. As a direct and proximate result of Arch's breach of contract, Elevation has been deprived of the benefits of the Policy and has incurred damages, the amount of which shall be determined at trial, plus pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

**COUNT VI**

**Bad Faith**

86. Elevation realleges and incorporates by reference herein as if fully restated the allegations in Paragraphs 1 through 49 of the Counterclaim.

87. Elevation has made a claim under the Arch Policy for its losses and has satisfied all conditions under the Policy.

88. As detailed in Section V, under the totality of the circumstances, Arch has failed and refused to timely pay the full insurance proceeds to which Elevation is entitled in multiple ways, including without limitation in the following:

(a) Wrongfully refusing to pay Elevation's covered losses, so as to advance its own pecuniary interests over the interests of Elevation's;

(b) Wrongfully failing to adopt and implement standards for the proper investigation of Elevation's claim as a part of its general business practice;

(c) Wrongfully refusing to pay, and knowingly undervaluing, Elevation's claim by treating Serenity at Dallas as two properties, rather than one property, in applying the OLLE;

(d) Wrongfully refusing to pay, and knowingly undervaluing, Elevation's claim by misallocating Elevation's losses between the Main Building and the Expansion Building in applying the OLLE; and/or

(e) Wrongfully refusing to pay, and knowingly undervaluing, Elevation's claim by refusing to apply the Errors and Omissions Endorsement consistent with the plain language of the Policies and consistent with insurance industry custom and practice.

89. Thus, Arch has violated Chapter 542 of the Texas Insurance Code, Section 624.155, Florida Statutes, and/or the common law of one or both states by failing to timely pay Elevation's full losses in connection with its claim.

90. As a direct and proximate result of Arch's actions, Elevation has been damaged, as more fully described above.

91. Consequently, Elevation is entitled to the damages set forth in Section 542.060 of the Texas Insurance Code, Section 624.155, Florida Statutes, and/or common law including, in addition to reasonable and necessary attorneys' fees, consequential damages arising from Arch's refusal to provide timely payment, as well as compensatory and punitive and exemplary damage, all in an amount to be determined at trial, together with statutory interest and pre- and post-judgment interest, as well as any and all other relief provided therein.

## COUNTERCLAIM PRAYER

WHEREFORE, Counter-Plaintiff Elevation requests the following relief against Counter-Defendant Arch:

(a) A declaratory judgment as follows:

1. For purposes of calculating Elevation's recovery under the OLLE, that the parties should consider the Serenity at Dallas as one property and, therefore, Elevation is entitled to a payment of at least $4,629,250 from Arch;

2. In the alternative, that Arch has misallocated Elevation's losses between the Main Building and the Expansion Building;

3. That the Arch Policy's coverage extensions apply, including, but not limited to, the following: the Debris Removal provision; the Business Income (and Extra Expenses) coverage form; and the Ordinance or Law Coverage Endorsement.

4. That the Errors and Omissions Endorsement applies to errors like those made in the SOV here and, thus, to Elevation's losses; and

5. That the Arch Policy follows form to the Illinois Union Errors and Omissions Endorsement and, thus, at a minimum, the Endorsement's $1 million sub-limit applies to Elevation's losses.

(b) Judgment awarding Elevation all damages caused by Arch's breaches of the Policies;

(c) Judgment awarding Elevation all damages sustained as a result of Arch's violations of Chapter 542 of the Texas Insurance Code and/or Section 624.155, Florida Statutes;

(d) Judgment awarding Elevation all reasonable and necessary attorneys' fees and expenses incurred in this matter under Section 38.001 of the Texas Civil Practice & Remedies Code and/or Chapter 542 of the Texas Insurance Code and/or Section 627.428(1), Florida Statutes;

(e) Judgment awarding Elevation pre-judgment and post-judgment interest in the amount allowed by Texas and/or Florida law;

(f) Awarding Elevation its costs of this action; and

(g) For such other relief as this Court may deem just and proper.

## JURY DEMAND

Elevation demands a jury trial on all issues contained in this Counterclaim that are so triable.

Respectfully submitted this 31st day of October, 2022.

/s/ Barry I. Buchman
Barry I. Buchman*
HAYNES and BOONE, LLP
800 17th Street NW
Suite 500
Washington, D.C. 20006
Telephone: (202) 654-4500
Facsimile: (202) 654-4501
Barry.Buchman@haynesboone.com

*Admitted *pro hac vice*

*Counsel for Defendant*
*Elevation Financial Group, LLC*

Thomas A. Zehnder
Florida Bar No.: 0063274
Dustin Mauser-Claassen
Florida Bar No.: 119289
KING, BLACKWELL, ZEHNDER
& WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
tzehnder@kbzwlaw.com
dmauser@kbzwlaw.com

*Counsel for Defendant*
*Elevation Financial Group, LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on October 31, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Thomas A. Zehnder
Thomas A. Zehnder
Florida Bar No.: 0063274

*Counsel for Defendant*
*Elevation Financial Group, LLC*